Claude GARRETT and John C. Garrett, Jr. d/b/a Cole & Garrett Funeral Directors, Plaintiffs-Appellees,

v.

FOREST LAWN MEMORIAL GARDENS, INC., Defendant-Appellant.

Court of Appeals of Tennessee, Middle Section.

June 29, 1979.

Rehearing Denied Aug. 3, 1979.

Certiorari Denied by Supreme Court Oct. 22, 1979.

Tyre B. Harris, Dodson, Harris, Robinson & Aden, Nashville, for plaintiffs-appellees.

Cecil D. Branstetter, Branstetter, Moody & Kilgore, Nashville, for defendant-appellant.

## OPINION

LEWIS, Judge.

This suit is on a Petition for Contempt filed in the Chancery Court at Nashville alleging that defendant is in violation of a permanent injunction issued against it in August, 1972.

The suit resulting in the issuance of the permanent injunction is *Garrett, et al. v. Forest Lawn Memorial Gardens*, 505 S.W.2d 705 (Tenn.1974). There, plaintiffs sought an injunction against defendant to prevent it from soliciting and entering into contractual arrangements providing for the sale of burial spaces, funeral merchandise and membership in the Forest Lawn Memorial Membership Association. The Supreme Court granted certiorari to construe T.C.A. §§ 56–1101, 3201, 3205, and 3208, "so as to clarify the distinction which the statutes and cases make between a funeral director and home, on one hand, and associations and similar companies on the other."

The allegations were that defendant was engaged in the cemetery business and operated a division, Forest Lawn Memorial Membership Association, which entered into contracts for the sale of funeral services and attendant amenities on a pre-need basis. The contracts were alleged to be in violation of T.C.A. §§ 56–3205—3211. A membership fee of $100.00 was charged and granted the right of members to purchase the funeral service at $455.00.

The Court determined that the contracts were contracts of insurance under the definition of T.C.A. § 56–1101 and were in violation of T.C.A. § 56–3205 by constituting a contract which "tends to limit or restrict the freedom of choice in the open market regarding contract purchases and arrangements with reference to any part of a funeral service for such insured." 505 S.W.2d at 707.

T.C.A. § 56–3207 makes it unlawful for a company to contract with a funeral director for the procurement of services for the insureds.

T.C.A. § 56–3208 makes it illegal for certain groups and organizations to contract to furnish merchandise and/or services upon a person's death. It also forbids such a contract where there is a promise of a rebate, reduction in price or discount available.

In examining the statutes in question, the Supreme Court determined that T.C.A. § 56–3201,[1] is applicable to a licensed funeral director or home, as well as an association such as defendant, but not to an individual funeral home or director when the pre-need contract stipulates an option for a cash payment in the amount of the maximum price named in the settlement of the contract.

In construing T.C.A. § 56–3208,[2] the Court determined that the first paragraph

---

1. 56–3201. Burial policies—Cash option—Requirements.—It shall be unlawful for any person, partnership, corporation, company or any organization of any nature whatsoever, to execute or issue a contract on the life of any person residing in this state which provides that the death benefit, upon the insured's death, shall be settled by furnishing the deceased insured with burial or some part of such service, at a price named in said contract exceeding one hundred dollars ($100), unless it is also stipulated therein that said death benefit may be paid in cash in a like amount as the maximum price named or expressed for the burial service or benefit in settlement of such contract, at the option of the representative of the deceased insured, which option must be evidenced in writing, signed by the representative of such deceased insured; and be it further provided, that nothing contained in this section shall be construed to apply to any of the organizations named in § 56–2429, or to any burial association when the certificate for burial benefits does not exceed one hundred dollars ($100).

2. 56–3208. Contracts for funeral merchandise or service.—It shall be unlawful for any life

was not applicable to a funeral home or director but was applicable to an association separate from a funeral home. The Court held that the first paragraph precludes an association "from dealing in funeral merchandise whether or not a discount is involved." 505 S.W.2d at 709.

As to T.C.A. § 56–3205,[3] the Court found it applicable to associations and similar companies but not to individual funeral directors or homes who may contract within the other statutory limitations on a preneed basis.

The Supreme Court affirmed the Judgment of the Court of Appeals affirming the Chancellor's Decree issuing the permanent injunction.

In his Memorandum of June 29, 1978, the Chancellor, in the suit at bar, found the following portion of the contract in issue to be pertinent in his decision.

> Seller agrees to sell to the undersigned Purchaser(s) and Purchaser(s) agree to buy from seller _____ funeral service(s) for a total consideration of $_____.

Further, under the heading "FUNERAL SERVICES PROVIDED":

> Funeral Service shall consist of ___ casket(s) # ___ color _____ vault(s) _____, removal of the deceased to a mortuary (not over 50 miles radius from Goodlettsville), securing necessary permits, professional care and preparation, use of private slumber room, use of funeral facilities _____, service of a licensed funeral director and assistant, funeral acknowledgement cards, memorial record book and staff services.

The defendant had argued that the agreement had provided for the deposit of all monies received to be in a trust fund as prescribed by T.C.A. §§ 62–527—535 which thus made the contracts legal.

The Chancellor found no proof that such a trust fund had been established and further that T.C.A. § 62–535 seemed to exclude from its provisions any contract subject to regulation or registration by the State of Tennessee, Department of Insurance.

The Chancellor held that the injunction specifically prohibits contracts in violation of T.C.A. §§ 56–3205—3208. Defendant was held to have violated these sections. Defendant was held in contempt of court but no punishment imposed because "respondents were relying in good faith upon the advice of counsel who redrafted their agreement . . . ."

Defendant has assigned three (3) errors in the court below:

> The Chancellor erred because, as a matter of law, appellant did not violate T.C.A. §§ 56–3205—3208, the code sections covered by the injunction.

> The Chancellor erred in finding appellant guilty of contempt because he im-

---

insurance company, fraternal benefit society, or similar company, or association, engaged in writing any type of life insurance by whatever name called, upon the lives of citizens of this state, to enter into any contract with any citizens of this state, contracting and agreeing to furnish merchandise or services upon the death of any person insured.

It shall further be unlawful for any person, firm or corporation to issue any policy or certificate, or to enter into any contract, conditioned to take effect on the death of any person, wherein such person, or the personal representative, heirs or next of kin of such person, is promised any rebate, discount or reduction in price for or on account of funeral merchandise, expenses or services by virtue of his being issued such policy or certificate, or being designated as beneficiary therein, or by virtue of his entering into such contract or being designated therein as the recipient of any such rebate, discount or reduction in price.

**3.** 56–3205. Designation of funeral director by insurer.—It shall be unlawful for any life insurance company, fraternal benefit society, or other similar company, association, or society issuing insurance policies, contracts, or certificates upon the lives of citizens of this state, to designate in said policy contract, or certificate, or otherwise, the person, firm or corporation to conduct the funeral of the insured, or to organize, promote or operate any enterprise or plan, or to enter into any contract with such insured or with any other person, which plan or contract tends to limit or restrict the freedom of choice in the open market of the person or persons having the legal right of such choice regarding contracts, purchases and arrangements with reference to any part of a funeral service for such insured.

properly imposed the burden of proof on appellant and there is no material evidence to support the findings.

The Chancellor erred in holding appellant in contempt of court because the Chancellor found appellant had not willfully violated the injunction.

In support of its position on assignment one (1), defendant asserts that the contract in this case was made directly with Woodlawn Memorial Gardens, Inc., a funeral home. Therefore, only the second paragraph of T.C.A. § 56–3208 would apply. Defendant asserts that it has complied with the second paragraph of T.C.A. § 56–3208 because the purchaser is not promised a discount of any nature.

Further, defendant contends that the sale of pre-need burial services and merchandise is specifically legalized by T.C.A. §§ 62–528 —538, which, being passed subsequent to T.C.A. § 56–3208, evinces a legislative intent to permit the sale of pre-need burial services and merchandise while insuring the integrity of monies advanced for them. In addition, a construction of T.C.A. §§ 62–528 —538 prohibiting the sale of pre-need funerals would destroy the consumer-protective purposes of T.C.A. §§ 62–528—538.

Defendant also contends that the Chancellor's grounds for his decision were improper because the contract specifically avers the creation of the trust fund. Further, defendant claims that the Chancellor erred in holding that T.C.A. §§ 62–528—535 is not applicable to the contract at bar because, in the Chancellor's words, "T.C.A. § 62–535 seems to exclude from these provisions any contract or security which under pre-existing laws is subject to regulation or registration by any division of the Department of Insurance." It is defendant's position that since the courts have construed pre-need funeral contracts to be contracts of insurance and thus subject to regulation by the Department of Insurance, the Chancellor's rationale has rendered T.C.A. §§ 62–528—535 "totally inapplicable to any situation."

■ Defendant's contention that the contract in this case was made directly with Woodlawn Memorial Gardens, Inc., a funeral home, is not substantiated by the record. By the terms of the contract itself, the "Seller" is named as "Forest Lawn Memorial Gardens, Inc." The Security Agreement also refers to the "Company" as "Forest Lawn Memorial Gardens, Inc." Further, the Security Agreement refers to Forest Lawn Memorial Gardens, Inc. as a "cemetery corporation." The record is devoid of any mention of a "Woodlawn Memorial Gardens, Inc."

■ . Defendant's contention that its sale of pre-need burial services and merchandise is legalized by T.C.A. §§ 62–528—538 is unwarranted. The provisions of T.C.A. §§ 56–3205—3208 and T.C.A. §§ 62–528— 538 must be read in pari materia.

■ The repeal of statutes by implication is not favored in the law. Only where the conflict between the earlier statute(s) and later statute(s) is completely irreconcilable will the earlier statute be held repealed by implication. *Massachusetts Mut. Life Ins. Co. v. Vogue, Inc.*, 54 Tenn.App. 624, 393 S.W.2d 164 (1965). *See also, Reams v. Trostel Mechanical Industries, Inc.*, 522 S.W.2d 170 (Tenn.1975) (Prior act repealed only to extent of repugnancy and conflict).

■ These apparently conflicting code sections are reconcilable and T.C.A. §§ 62– 528—538 not rendered negatory, contrary to defendant's contentions.

These code sections appear in Chapter 5 of the Tennessee Code Annotated, entitled "Funeral Directors and Embalmers". T.C.A. § 62–501 defines "Funeral establishment" as "any business, whether a proprietorship, partnership, firm, association or corporation, engaged in . . . the preparing of dead human bodies for burial . . . ."

T.C.A. § 62–528 states:

62–528. Contracts for future funeral services void—Exceptions.—Any agreement, contract or plan requiring the payment of money in a lump sum or instalments which is made or entered into with any person, association, partnership, firm

or corporation for the final disposition of a dead human body, or for funeral or burial services, or for the furnishing of personal property or funeral or burial merchandise, wherein the use of the personal property or the funeral or burial merchandise or the furnishing of professional services by a funeral director or embalmer is not immediately required, is hereby declared to be against public policy and void, unless all money paid thereunder shall be paid to and held by a bank or trust company which is authorized to do business in this state, or an insured federal savings and loan association, and subject to the terms of an agreement for the benefits of the purchaser of said agreement, contract or plan, provided, however, for the purpose of §§ 62–528—62–535, personal property shall not be construed to include cemetery lots or permanent grave markers.

T.C.A. §§ 56–3201—3208 provide for who can issue a burial policy and when. Consistent with the injunction in this cause, defendant is not one of those persons/companies.

For those who do not fall within the ambit of T.C.A. §§ 56–3201—3208, i. e. funeral directors and homes, and can issue such policies, in order to do so, they must comply with the terms of T.C.A. §§ 62–501—538.

■ Further, T.C.A. § 62–535 takes defendant outside the scope of T.C.A. §§ 62–528—535.

> 62–535. Exclusions.—Nothing in §§ 62–528—62–535 shall be construed to apply to any contract or security which under pre-existing laws is subject to regulation or registration by any division of the department of insurance of the state of Tennessee, nor shall it apply to any burial association where the certificate for burial benefits does not exceed one hundred dollars ($100).

Defendant, as a cemetery corporation organized and existing under the laws of the State of Tennessee is not entitled to claim the benefits of T.C.A. §§ 62–501—538, by the terms therein.

By its second assignment of error, defendant asserts that the Chancellor erred in placing the burden of proof on defendant and further that there is no material evidence to support the findings.

■ Defendant contends that proceedings for contempt resulting from the violation of an injunction are proceedings for criminal contempt. Therefore, the burden is upon complainant to establish guilt beyond a reasonable doubt.

It is defendant's position that the Chancellor placed the burden on defendant by rejecting the defense of the establishment of a trust account because defendant had not proved its existence. Further, defendant maintains that the Chancellor imposed upon it the burden of proving that the price charged for pre-need burial services and merchandise constitutes a promise of a discount in violation of T.C.A. § 56–3208.

The Chancellor's Memorandum of June 29, 1978, after a synopsis of defendant's position regarding T.C.A. §§ 62–527—535, states:

> However, there was no proof that the trust fund had been established and T.C.A. § 62–535 seems to exclude from these provisions any contract or security which under preexisting law is subject to regulation or registration by any division of the Department of Insurance of the State of Tennessee.

Pursuant to T.C.A. § 62–535, quoted *supra*, the Chancellor is correct in noting the inapplicability of T.C.A. §§ 62–528—535 to defendants. Therefore the issue of the burden of proof as to the establishment of a trust fund is moot.

Further, since the defendant is a "cemetery corporation" within the scope of the first paragraph of T.C.A. § 56–3208, the trial in this cause did not require any proof as to a promise of discount. The only proof required was that defendant was engaged in writing "any type of life insurance by whatever name called, upon the lives of citizens of this state, to enter into any contract with any citizens of this state, con-

tracting and agreeing to furnish merchandise or services upon the death of any person insured."

The record and exhibits thereto establish that defendant was engaged in just such transactions. The contract, being in evidence, mandates that conclusion.

Defendant's final contention is that the Chancellor erred in holding it in contempt of court because he found defendant had not willfully violated the injunction.

In the Court's Memorandum, the Chancellor states:

> The Court concludes, therefore, that the respondents are in contempt of Court for violating the previous orders of the Court.

The Court did not impose punishment because the defendant had been relying in good faith upon the advice of counsel who had redrafted the agreement.

 Defendant was held in contempt for violating an order of the Court. Although the distinction is sometimes very hazy, there is a distinction between a criminal and a civil contempt. The defendant's actions at bar constitute a criminal contempt which is one directed against the dignity and authority of the court. *See O'Brien v. State ex rel. Bibb*, 26 Tenn.App. 270, 170 S.W.2d 931 (1942). A civil contempt is one where a person refuses or fails to comply with an order of the court and punishment is meted out for the benefit of a party litigant. *See Shiflet v. State*, 217 Tenn. 690, 400 S.W.2d 542 (1966). In neither a civil nor criminal contempt case is the defense of acting under the advice of counsel sufficient to prevent a finding that defendant is guilty of contempt. Rather, acting in good faith upon the advice of counsel is a mitigating factor considered in determining the appropriate punishment. *See Robinson v. Air Draulics Engineering Co.*, 214 Tenn. 30, 377 S.W.2d 908 (1964); *Blair v. Nelson*, 67 Tenn. (8 Baxter) 1 (1874); *Churchwell v. Callins*, 36 Tenn.App. 119, 252 S.W.2d 131 (1952).

Being a matter of criminal contempt, it is incumbent that defendant receives the benefit of the presumption of innocence and that it be proven guilty beyond a reasonable doubt.

 Here, the contract speaks for itself. It is in violation of both the statutory law and the injunction of August, 1972. The defendant, on the face of the pleadings and exhibits attached thereto, was guilty as a matter of law. The burden thus shifted to defendant to assert any affirmative defenses available or to refute the evidence offered against it. As is evident from the record below and our analysis of the issues raised on this appeal, defendant has failed to meet its burden.

The assignments of error are overruled. The judgment of the Chancellor, as modified on September 5, 1978, is affirmed. Costs are taxed to defendant.

SHRIVER, P. J., and TODD, J., concur.